IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 9, 2010 Session

# H.J. HEINZ COMPANY, L.P.  v. LOREN L. CHUMLEY, COMMISSIONER OF REVENUE, STATE OF TENNESSEE

Direct Appeal from the Chancery Court for Davidson County
No. 06-885-II     Carol L. McCoy, Chancellor

No. M2010-00202-COA-R3-CV - Filed June 28, 2011

Plaintiff/Appellant H.J. Heinz Company, LP, is a Delaware limited partnership that manufactures, sells and distributes food products.  Plaintiff operates a facility in Nashville, Tennessee.  The issue in this case is whether Plaintiff's income from its investment in HJH One, LLC, is subject to taxation, on an apportionment basis, in Tennessee.  The trial court determined that the earnings constituted business earnings as defined by the relevant statutes, and that the Department of Revenue's assessment of franchise and excise taxes on the earnings was constitutional.  The trial court further determined that the apportionment formula used by the Department was correct.  The trial court awarded summary judgment to the Commissioner, and Plaintiff appeals.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,W.S., and J. STEVEN STAFFORD, J., joined.

Michael D. Sontag, Andrea Taylor McKellar and Stephen J. Jasper, Nashville, Tennessee, for the appellant, H.J. Heinz Company, L.P.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, and Jonathan N. Wike, Assistant Attorney General, for the appellee, Loren L. Chumley, Commissioner of Revenue, State of Tennessee.

## OPINION

The issues disputed in this tax case are whether Tennessee may constitutionally tax certain earnings of a non-Tennessee entity, whether that income constitutes "business earnings" as statutorily defined, and whether the apportionment formula used by the Tennessee Department of Revenue ("the Department") to calculate the tax amount was proper.  The facts giving rise to this lawsuit are not disputed, and the trial court awarded summary judgment to the Department.  Plaintiff

taxpayer H.J. Heinz Company, L.P. ("Heinz LP") appealed. During the pendency of the appeal of this matter, the Tennessee Supreme Court issued its opinion in *Blue Bell Creameries, L.P. v. Roberts,* 333 S.W.3d 59 (Tenn. 2011). In light of *Blue Bell*, we affirm summary judgment in favor of the Department in this case.

### *Procedural Background*

Heinz LP is a Delaware limited partnership with its principal place of business in Pittsburgh, Pennsylvania. It operates facilities across the United States, including a facility in Nashville that produces single-serve packages of salad dressings, mayonnaise and dipping sauces. In February 2005, Heinz LP filed its Tennessee franchise and excise tax return for the 2004 tax year. It listed total business earnings in the amount of $336,231,815, and its apportionment ratio as 2.2556 percent. Heinz LP listed its total earnings subject to excise tax as $7,584,045, and its excise tax liability as $492,963. It listed $117,031,379 as non-business income that was not included in its Tennessee excise tax base. The Department determined that the amount listed as non-business income ("the disputed income") was improperly classified, and that the income constituted business earnings. It therefore assessed additional tax for the tax period ending April 30, 2004, in the amount of $157,939.14, plus interest through the date of assessment in the amount of $16,604.69. The Department notified Heinz LP of the assessment by notice dated August 7, 2005.

In April 2006, Heinz LP filed an action in the Chancery Court for Davidson County challenging the assessment pursuant to Tennessee Code Annotated § 67-1-1801(a)(1)(B). In its complaint, Heinz LP asserted the disputed income derived from an activity that was independent of its food manufacturing-related activities. It asserted the disputed income derived from "a passive equity investment in HJH One LLC" ("HJH One") which owned all of the issued and outstanding 6.5% Third Cumulated Preferred Second Series Preferred Stock of the H.J. Heinz Company ("Heinz Co") and 6,090,351 shares of the issued and outstanding common stock of the Hain Celestial Group, Inc. Heinz LP additionally asserted that HJH One received approximately $120 million annually in dividends from Heinz Co, and that HJH One in turn distributed income to Heinz LP. Heinz LP alleged the assessment and collection of taxes on the disputed income was erroneous and illegal because 1) the income from Heinz LP's investment in HJH One (and from HJH One's investment in Heinz Co) constituted non-business earnings under Tennessee Code Annotated § 67-4-2002(24); and 2) Heinz LP and HJH One/Heinz Co did not operate as a unit and are not related enough to constitute a singly, unitary business operation. Heinz LP asserted that the Department had concluded that HJH One should not be treated as a separate entity from Heinz LP. Heinz LP asserted it was entitled to the dividends received deduction under Tennessee Code Annotated § 67-4-2006(b)(2)(A) because HJH One's "separate existence must be respected." It also asserted that the apportionment formula used by the Department to compute the tax liability was improperly calculated. Heinz LP prayed for a judgment in its favor, costs, reasonable attorney's fees and expenses of litigation pursuant to Tennessee Code Annotated § 67-1-1803(d). It also filed an affidavit of John C. Crowe (Mr. Crowe), Vice President - Tax of Heinz Management LLC, the general partner of Heinz LP. In his affidavit, Mr. Crowe stated that he was authorized to sign on behalf of Heinz LP with respect to tax matters, and that the lawsuit was brought in good faith and not solely for the purpose of delay.

The Department answered in May 2006. The Department denied that the assessment of tax and the apportionment formula were improper or incorrect. It asserted that Heinz LP had not paid the assessment at issue, and that interest continued to accrue on the assessment. The Department also asserted that Heinz LP owned 100 percent of HJH One; that HJH One held preferred shares of Heinz Co; and that HJH One had no other operations. It contended that Heinz LP reported dividends from the Heinz Co preferred stock as non-business earnings, and that the dividends were, in fact, business earnings subject to taxation. The Department denied Heinz LP's allegation that it had determined that Heinz LP and HJH One were not separate entities, and that it had based its assessment of taxes on this conclusion. The Department counterclaimed and prayed for a judgment in its favor in the amount of $174,543.83, accrued statutory interest, attorney's fees and expenses under Tennessee Code Annotated § 67-1-1803(d), and costs.

Heinz LP answered the Department's counterclaim and admitted that it owned 100 percent of HJH One. It also admitted that HJH One held preferred shares of Heinz Co. It denied the Department's remaining assertions.

In April 2008, the trial court entered an agreed order consolidating the matter with *H.J. Heinz Co., L.P. v. Reagan Farr*, an action that challenged the Department's assessment of franchise and excise taxes for the periods ending April 30, 2005, and April 30, 2006, which involved identical issues and an assessment in the amount of $308,010.70, including interest. The parties filed cross-motions for summary judgment and statements of undisputed facts in March 2009. In its motion, the Department asserted that Heinz LP's income from HJH One constituted business income as defined in Tennessee Code Annotated § 67-4-2004(4) and was therefore apportionable to Tennessee as part of Heinz LP's excise tax base. It further asserted that such taxation did not violate the Commerce Clause of the United States Constitution, and that Heinz LP was not entitled to the deduction for dividends received under Tennessee Code Annotated § 67-4-2006(b)(2)(A).

Heinz LP, on the other hand, asserted the disputed income resulted from a passive investment in HJH One, and that it was not business income under the statute. It further asserted that income it received from HJH One derived from dividends HJH One received from Heinz Co. Heinz LP asserted it never used the income it received from HJH One, but deposited the income into an interest-bearing account until the funds were distributed to its partners. It argued that the income derived from Heinz Co's world-wide activities, including those conducted by Heinz Co's foreign affiliates, which neither owned property in nor conducted business in Tennessee. It argued that Tennessee "lack[ed] any nexus with either HJH [One], Heinz Holding Company, or the Foreign Affiliates that would permit [the Department] to tax the passive investment income [Heinz LP] received from HJH [One]." It asserted that the Department's assessment of tax was, therefore, in violation of the Commerce Clause of the United States Constitution. It further argued that, should the income be determined to be business income and the assessment of tax constitutional, the apportionment ratio used by the Department was unfair and "drastically out of proportion."

The parties' cross-motions were heard by the trial court in June 2009. The trial court issued a memorandum and order granting summary judgment to the Department on November 24, 2009. On December 21, 2009, the trial court entered final judgment awarding summary judgment to the Department on its counterclaims and dismissing the claims of Heinz LP. The trial court entered a judgment in favor of the Department in the amount of $482,554.54, plus interest at the statutory rate. The trial court assessed costs against Heinz LP and determined that the Department was entitled to attorney's fees as the prevailing party under Tennessee Code Annotated § 67-1-1803(d). It reserved the determination of the amount of attorney's fees and entered final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. Heinz LP filed a notice of appeal on December 22, 2009. Oral argument was heard by the Western Section of this Court sitting in Nashville on September 9, 2010.

While appeal of this matter was pending, on January 24, 2011, the Tennessee Supreme Court issued its opinion in *Blue Bell*, reversing the judgment of this Court and awarding summary judgment to the Department in a matter involving issues nearly identical to those involved in this case. On January 25, 2011, the Department filed the supreme court's opinion in *Blue Bell* as supplemental authority in this case. Heinz LP filed a response on January 26, 2011. On January 31, 2011, the Department moved this Court to strike Heinz LP's response; on February 1, Heinz LP filed an opposition to the Department's motion to strike. We denied the Department's motion to strike Heinz LP's response and on February 18, 2011, ordered the parties to file supplemental briefs in light of *Blue Bell*. In addition to the question of whether the disputed income constituted business income under *Blue Bell*, we directed the parties to address the significance of HJH One as the direct source of the disputed income received by Heinz LP. We also directed the parties to address whether a unitary relationship exits between the "relevant entities" in light of *Blue Bell*. Heinz LP filed its supplemental brief on March 21, 2011; the Department filed its supplemental brief on April 20, 2011; and Heinz LP filed its supplemental reply brief on May 4, 2011.

### Issues Presented

Heinz LP presents the following issues for our review:

(1)     Whether the [trial] court erred in holding that dividend income Plaintiff received from its passive investment in another entity constituted "business earning" under the applicable statutes when the income was not acquired or used as part of Plaintiff's business operations and did not arise from transactions or activities in the regular course of Plaintiff's trade or business.

(2)     Whether the [trial] court erred in concluding that dividend income earned outside Tennessee arose from a business that was unitary with Plaintiff's business activity in Tennessee so as to provide Defendant a constitutional basis to tax such income where the vast majority of the income comprising those receipts was earned by affiliates whose businesses were functionally and operationally separate from Plaintiff's operations and where Plaintiff

-4-

never used those investments earnings in its business operations.

(3)      Assuming the presence of a unitary enterprise, whether the [trial] court erred in upholding the apportionment ratio Defendant employed to assess franchise and excise taxes on dividend income received by Plaintiff when that ratio completely fails to account for the property, payroll, and sales of the allegedly unitary enterprise that earned the dividend income at issue and, therefore, results in a tax that is in no way fairly related to the economic activity in the allegedly unitary enterprise conducted in Tennessee.

### *Standard of Review*

We review a trial court's award of summary judgment *de novo*, with no presumption of correctness, reviewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Martin v. Norfolk Southern Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted). Summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* at 83 (quoting Tenn. R. Civ. P. 56.04). The burden is on the moving party to demonstrate that the admissible facts in the record show there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Blue Bell Creameries v. Roberts,* 333 S.W.3d 59, 64 (Tenn. 2011)(citations omitted). These elements are not altered where both parties have moved for summary judgment. *Id.* Rather, each party has the burden of demonstrating that it is entitled to summary judgment. *Id.* Where the parties submit differing statements of fact but do not contest any fact, we will review the record to determine whether a genuine issue of material fact exists. *See id.*

In the present case, the parties both assert that no genuine issue of material fact exists. Each contends, however, that it is entitled to a judgment as a matter of law. Upon review of the record, we agree that no issue of material fact exists. "The determination of whether a tax assessment is contrary to statute or is unconstitutional requires an application of law to the facts." *Id.* Appellate review of a trial court's application of the law to the facts is *de novo*, with no presumption of correctness. *State v. Ingram*, 331 S.W.3d 746, 755 (Tenn. 2011).

### *Discussion*

An excise tax is a tax assessed to corporate "net earnings." Tennessee Code Annotated §§ § 67-4-2005 to 2007 (2006 & Supp. 2010);[1] *Blue Bell*, 333 S.W.3d at 65. It is undisputed in this case that Heinz LP is subject to an excise tax assessment in Tennessee on an apportioned basis where it owns and operates a manufacturing facility in Nashville. *See Allied-Signal, Inc. v. Dir., Div. of*

---

[1]For the sake of simplicity, we will cite to the current codification in the absence of any discrepancy between the current code and that in effect during the audit periods.

*Taxation*, 504 U.S. 768 (1992); Tenn. Code Ann. §§ 67-4-2010 to 2013(2006 & Supp. 2010); *Blue Bell*, 333 S.W.3d at 69-70. The question in this case is whether Tennessee may assess taxes on the income which Heinz LP received from HJH One during the tax periods addressed here. Heinz LP asserts the disputed income is not subject to taxation in Tennessee because it is merely passive investment income and not "business earnings" as defined by Tennessee Code Annotated § 67-4-2004. Heinz LP further asserts that, if the disputed income constitutes business earnings, the Department's assessment of taxes is unconstitutional because the disputed income is not derived from an activity that is unitary with Heinz LP's activities in Tennessee. It contends that these assertions are supported by the historical state and federal case law, including the Tennessee Supreme Court's recent decision in *Blue Bell*. Heinz LP finally asserts that if excises taxes may be assessed on the disputed income in Tennessee, the Department did not apply a correct apportionment ratio.

The Department, on the other hand, argues that *Blue Bell* supports its assertion that the disputed income constitutes business income under the "functional" test. It argues that the assessment of excise taxes is constitutional under the unitary activity doctrine, and that the apportionment ratio was correctly calculated. We turn first to a brief discussion of the source of the disputed income before addressing the issues raised on appeal. We then address whether the disputed income is business income under the Tennessee Code and the test developed in *Blue Bell* before turning to whether the disputed income arises from an activity that is unitary with Heinz LP's activity in Tennessee. We finally address Heinz LP's assertion that the Department used an incorrect apportionment ratio in calculating the tax assessment.

### *Factual Background*

Heinz LP is one of a number of entities affiliated with the H.J. Heinz Company, which was incorporated in Pennsylvania in 1900. According to Pat Bianconi (Mr. Bianconi), the general tax counsel for Heinz Co, the Heinz group of companies reorganized in 2001, consolidating formerly separate functions of the Heinz entities in order to address sales, accounting, tax and other issues of contemporary business practices. Following the 2001 reorganization, food manufacturing, selling and distribution activities in the United States that formerly were conducted by separate entities of the Heinz group were consolidated and contributed to Heinz LP in exchange for partnership interests.

The general partner in Heinz LP is Heinz Management, L.L.C. ("Heinz Management"), which is a directly owned affiliate of Heinz Co. Heinz Management is the Class A partner in Heinz LP and, according to the 2002 schedule in the record, has a .004 percent interest in Heinz LP. The major Class B limited partners are Heinz Co, which has a 60.357 percent interest in Heinz LP; H.J. Heinz Finance Company ("Heinz Finance"), which has a 10.442 percent interest; and CMH, Inc., which has a 27.078 percent interest. Heinz Co owns 75 percent of Heinz Finance, which became the financing arm of the Heinz group after the 2001 reorganization. CMH, Inc., the former financial entity of the Heinz group, now is a totally-owned subsidiary of Heinz Finance. It currently is an inactive lending company that, according to Mr. Bianconi, engages in no activity. In 2001, CMH contributed affiliate loans receivable valued in the amount of $1,895,245,000 to ProMark, Inc.

("PMH", the holding company of ProMark Brands, Inc., which owns the domestic trademarks of Heinz) in exchange for shares of PMH preferred stock. It then contributed the PMH stock to Heinz LP in return for a partnership interest. ORA Corporation, which owns a minor partnership interest in Heinz LP, also is a totally-owned subsidiary of Heinz Finance. The other minor partners are Heinz Co affiliates.

During the same period, Heinz Management formed HJH One, an investment company, and contributed it to Heinz LP. Thus, Heinz LP became the sole member of HJH One. Heinz LP contributed its stock in PMH to HJH One. The PMH stock was exchanged for preferred stock in Heinz Co after the reorganization. As a result of the exchange, HJH One owns the issued and outstanding 6.5% Third Cumulative Preferred Second Series Preferred Stock of Heinz Co. Dividends received from the Heinz Co preferred stock are the sole source of income of HJH One.

Under the current organization, HJH One receives stock dividends from Heinz Co, and Heinz LP receives partnership investment income in the amount of approximately $120 million annually from HJH One. Heinz LP deposits this investment income into a short-term debt account with Heinz Finance. The funds then potentially are available to Heinz  LP, although Heinz LP has a credit balance with Heinz Finance. Additionally, Heinz Finance pays money back to Heinz LP for the purpose of making partnership distributions to the Heinz LP partners, including Heinz Finance and Heinz Co. Heinz LP earns interest at an arms-length rate on its account with Heinz Finance, and has paid applicable taxes on the interests.

### *Business Earnings*

Heinz LP argues that the disputed income is dividend income from its passive investment in HJH One, and that is not subject to excise taxation in Tennessee. It asserts that under either the "transactional" or "functional" tests developed by the courts, the income cannot be characterized as business earnings under Tennessee Code Annotated § 67-4-2004. Heinz LP submits that it neither uses nor holds the income derived from its investment in HJH One, but that the income is "swept" into Heinz Finance. It asserts it never actually uses the income in its business operations.

The Department, on the other hand, asserts the income is business earnings under the functional test adopted by the supreme court in *Blue Bell*. It asserts the disputed income "contributed materially" to Heinz LP's "production of business earnings." It also asserts that the disputed income derived from an investment that accompanied the reorganization of the Heinz entities that was beneficial to Heinz LP, and that both the reorganization and the income contributed to the entire enterprise.

The Tennessee Code defines "business earnings" as:

> earnings arising from transactions and activity in the regular course of the taxpayer's trade or business or earnings from tangible and intangible property, if the acquisition, use, management or disposition of the property constitutes an integral part of the

taxpayer's regular trade or business operations. In essence, earnings that arise from the conduct of the trade or trades or business operations of a taxpayer are "business earnings," and the taxpayer must show by clear and cogent evidence that particular earnings are classifiable as nonbusiness earnings. A taxpayer may have more than one (1) regular trade or business in determining whether income is "business earnings." This subdivision (4) expresses the legislative intent to implement and clarify the distinctions between business and nonbusiness earnings, as found in the Uniform Division of Income for Tax Purposes Act, as generally interpreted by states adopting the act[.]

Tennessee Code Annotated § 67-4-2004(4)(Supp. 2010). Defined broadly, "net income" is the income reported to the federal government. *Blue Bell Creameries v. Roberts,* 333 S.W.3d 59, 65 (Tenn. 2011). Courts apply either the transactional test or the functional test to determine whether earnings are business earnings under the statute. *Id.* (citations omitted). Under the transactional test, business earnings are those "arising from transactions and activity in the regular course of the taxpayer's trade or business . . . ." *Id.* (quoting Tennessee Code Annotated § 67-4-2004; other citations omitted). Under the functional test, earnings from tangible and intangible property are classified "as business earnings if the acquisition, use, management or disposition of the property constitutes and integral part of the taxpayer's regular trade or business." *Id.* (quoting *id.*) In the current case, we must determine whether the income that Heinz LP receives annually from its investment in HJH One is integral to its regular business in light of the supreme court's decision in *Blue Bell*.

The *Blue Bell* court considered whether a one-time, extraordinary capital gain arising from the taxpayer's acquisition and sale of stock constituted business earnings under the statute. In *Blue Bell*, the court adopted the functional test developed by the California Supreme Court in *Hoechst Celanese Corp. v. Franchise Tax Board*, 22 P.3d 324 (Cal. 2001), and held that the income disputed in that case was business earnings under the statute. *Blue Bell*, 333 S.W.3d at 68. The court held that the language "acquisition, use, management or disposition of the property" used in the statutory definition of business earnings "suggests that the taxpayer must control, but not necessarily own, the property for earnings arising from that property to qualify as business earnings." *Id*. The *Blue Bell* court further opined that "property must contribute materially to the production of business income to constitute an integral part of taxpayer's regular trade or business operations." *Id*. (citing *Hoechst Celanese*, 22 P.3d at 338-39). The court reasoned, "[t]his approach appropriately includes earnings from property that allows the taxpayer's business operations to prosper while excluding earnings from property that is incidental or unrelated to the taxpayer's business operations." *Id*. It accordingly held "that earnings from a taxpayer's property constitute business earnings pursuant to the functional test if the taxpayer's control of the property contributes materially to taxpayer's production of business earnings." *Id*.

The *Blue Bell* court held that the one-time, extraordinary capital gain arising from the sale of stock as part of a business reorganization in that case was properly characterized as business earnings under the statute. *Id.* at 69. In so holding, the court recognized that the stock transaction

in that case had no effect on the taxpayer's business activities with respect to the production, distribution or sale of ice cream. It noted, however, that the stock transaction

> reduced expenses that detracted from the earnings arising from the sale of Blue Bell ice cream in Tennessee and elsewhere. This result was accomplished because the Stock Transaction completed the reorganization that allowed the business entitles profiting from the sale of Blue Bell ice cream to avoid costly public reporting requirements. The Stock Transaction and reorganization also removed one level of federal taxation on the earnings arising from the Blue Bell ice cream business.

*Id.* It accordingly held that the stock transaction materially contributed to the taxpayer's business earnings that arose from the sale of ice cream, and that the capital gains were business earnings under the functional test. *Id*.

Unlike the capital gain in *Blue Bell*, the disputed income in this case arises not from a one-time extra-ordinary transaction, but from funds that flow from HJH One to Heinz LP on a regular basis. The disputed income does not arise from the production, distribution or sale of single-serve food items such as those produced by Heinz LP's facility in Nashville. However, it arises from a separate entity, HJH One, which apparently serves no purpose other than to hold stock in Heinz Co and to pass dividend income onto Heinz LP in the form of investment income. The partnership investment income received by Heinz LP is then "swept" to Heinz Finance, which Mr. Bianconi stated issues debt and maintains the debt that is issued to third parties, including banks and commercial paper. Mr. Bianconi stated that the purpose of issuing debt is to fund the operations of Heinz Co and other Heinz entities, and that Heinz LP generally maintains a credit balance. Heinz LP's investment income and cash from its operations in excess of that needed for operations is swept into Heinz Finance until being distributed to the Heinz LP partners. Further, as noted above, the current organizational structure of the Heinz entities was established by a substantial reorganization of the Heinz Company and its affiliates, which was undertaken to benefit the organization in light of marketing, distribution, and tax considerations.

Applying the functional test adopted by the supreme court in *Blue Bell* to these facts, we conclude that the disputed income is characterized as earnings that "allow the taxpayer's business operations to prosper." We accordingly hold that the disputed income is properly characterized as business earnings under Tennessee Code Annotated § 67-4-2004(4).

### *Constitutionality of the Assessment*

The Due Process clause of the United States Constitution imposes two requirements for a state to tax income that is generated in interstate commerce. First, there must be a "minimal connection" between the state and the interstate activities. Second, a "rational relationship" must exist between the income that is attributed to the state and the enterprise's intrastate value. *Mobil Oil Corp. v. Comm'r of Taxes of Vermont*, 445 U.S. 425, 436 -437(1980)(citations omitted). "[T]he linchpin . . . is the unitary-business principle." *Id*. at 439. Under the unitary-business principle, "[a]

state may . . . tax an apportioned share of the value generated by the intrastate and extrastate activities of a multistate enterprise if those activities form part of a 'unitary business.'" *MeadWestvaco Corp. v. Illinois Dep't of Revenue*, 553 U.S. 16, 19 (2008). A state may not tax value "derived from an 'unrelated business activity' which constitutes a 'discrete business enterprise.'" *Id.* at 25 (quoting *Allied-Signal, Inc. v. Dir., Div. of Taxation*, 504 U.S. 768, 778 (1992) (quoting *Exxon Corp. v. Dep't of Revenue of Wisconsin*, 447 U.S. 207, 224 (1980)(quoting *Mobil Oil*, 445 U.S. at 439)). When the asset to be taxed is another business, "the 'hallmarks' of a unitary relationship [are] functional integration, centralized management, and economies of scale." *Id.* at 30 (citations omitted).

The unity of the business enterprise is not dependent on the form of the business organization. *Mobil Oil*, 445 U.S. at 440. Operating separate elements of what is a "legally as well as functionally integrated enterprise" as subsidiaries rather than as divisions, and transforming what otherwise would be "income into dividends from legally separate entities works no change in the underlying economic realities of a unitary business[.]" *Id*. at 441. However, if the business activities of the dividend payor are unrelated to the recipient corporation's activities in the taxing state, a unitary relationship would not exist. *Id.* at 442. Capital gains are treated the same as dividends. *Allied-Signal, Inc. v. Dir., Div. of Taxation*, 504 U.S. 768, (1992)(citing *ASARCO Inc. v. Idaho Tax Comm'n*, 458 U.S. 307, 330 (1982)). The value of "other intangibles" is similarly treated. *MeadWestvaco Corp.*, 553 U.S. at 27. Additionally, "capital transactions can serve either an investment function or an operational function." *Id.* at 29 (quoting *Container Corp. of America v. Franchise Tax Bd.*, 463 U.S. 159, 180 (1983)). "[A]n asset could form part of a taxpayer's unitary business if it serve[s] an 'operational rather than an investment function' in that business" even if no unitary relationship exists between the payor and the payee. *Id*. at 28 (quoting *Allied-Signal*, 504 U.S. 879 at 787-788). The determination of whether the asset serves an operational function, as opposed to an investment function, is instrumental to the constitutional question of whether the asset is "a unitary part of the business being conducted in the taxing State rather than a discrete asset to which the State ha[s] no claim." *Id*. at 29-30.

Here and in the trial court, Heinz LP asserts the disputed income is not subject to the assessment of excise taxes in Tennessee because the value arises from a passive investment stock in HJH One and, ultimately, from Heinz Co stock. Heinz LP asserts its activities are not unitary with those of Heinz Co, and that the disputed income accordingly arises from a discrete business activity. It further asserts that the value of the stock flows from the activities of the foreign affiliates of Heinz Co. Heinz LP contends that the assessment of taxes by the Department is unconstitutional where the Department seeks to tax the value of foreign affiliates which engage in enterprises not connected with the activities of Heinz LP in Tennessee.

We find Heinz LP's characterization of the origin of the disputed income somewhat attenuated. As noted above, the disputed income does not flow directly from stock dividends paid to Heinz LP by Heinz Co, and it certainly does not flow to Heinz LP from the foreign affiliates of Heinz Co. Rather, according to Mr. Bianconi, the value to Heinz LP from HJH One is properly characterized as partnership investment income.

We find Heinz LP's discussion of whether it may be considered unitary with Heinz Co's foreign affiliates also unpersuasive. As the Department asserted in its supplemental brief, the supreme court's analysis in *Blue Bell* demonstrates that the relevant relationship is that of Heinz LP and HJH One. Accordingly, we turn to whether Heinz LP and HJH One are unitary.

As noted above, HJH One does not engage in the manufacture, distribution, or sale of packaged foods. Rather, it is a limited liability company whose sole function appears to be to hold stock, collect dividends, and pay partnership investment income to Heinz LP. Further, Heinz LP is its only member. Thus the inquiry in this case is whether the income flowing from HJH One to Heinz LP serves an operational function such that it is unitary with Heinz LP's business activity in Tennessee.

The *Blue Bell* court considered a circumstance similar to that presented in this case, applying the operational-functional concept suggested in *Allied-Signal* and elaborated upon in *MeadWestvaco*. *See Blue Bell Creameries, L.P. v. Roberts,* 333 S.W.3d 59, 70 (Tenn. 2011) (citing *Allied-Signal Inc.*, 504 U.S. 768, 787 (1992); *accord MeadWestvaco Corp.*, 553 U.S. 16, 29 (2008)). The *Blue Bell* court observed that the operational-functional concept may be used when determining whether income that is derived from an asset is part of the unitary business of the taxpayer. *Id.* (citing *Allied–Signal, Inc.*, 504 U.S. at 787, 112 S.Ct. 2251; *accord MeadWestvaco Corp.*, 553 U.S. at 29, 128 S.Ct. 1498 ("The concept of operational function simply recognizes that an asset can be part of a taxpayer's unitary business even if what we may term a 'unitary relationship' does not exist between the 'payor and payee.'"); *see Walter Hellerstein, MeadWestvaco and the Scope of the Unitary Business Principle*, 108 J. Tax'n 261, 263 (May 2008) ("[T]he Court explicitly embraced the 'operational-function' concept as a basis for apportionability of income from *assets*." (emphasis in original))). Utilizing this analysis, the supreme court reiterated that income from a capital transaction "is part of a taxpayer's unitary business if the capital transaction serves an operational function rather than an investment function." *Id.* (citing *Allied–Signal, Inc.*, 504 U.S. at 787, 112 S.Ct. 2251). A capital asset that "helps the taxpayer make better use of the taxpayer's existing business-related resources" serves an operational function. *Id.* (citing *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 178, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983)). An asset that serves an investment function, on the other hand, "serves to diversify the entity and reduce the risks associated with 'being tied to one industry's business cycle.'" *Id*. (quoting *id*.). The *Blue Bell* court stated that for the Department to be entitled to summary judgment in that case, the undisputed facts must demonstrate that the asset, a stock transaction arising from a business reorganization, served an operational function. *Id*

In *Blue Bell*, the taxpayer acquired and sold shares of stock "solely as part of the reorganization of the entities profiting from the business." *Id.* at 71. The transaction did not diversify the taxpayer's business and it did not reduce risks associated with its business. *Id.* Rather, the stock transaction and reorganization resulted in an increased net gain from taxpayer's business. *Id.* The *Blue Bell* court held that the capital transaction served an operational function for the taxpayer's business, and that the taxpayer's income from the stock therefore was unitary with its business. *Id.*

The court noted in *Blue Bell*:

> Taxpayer contends . . . that the Stock Transaction and reorganization were BBC USA's [its parent company's] activities. In support, it points to the uncontested fact that BBC USA implemented and controlled the reorganization, including the Stock Transaction. Although the reorganization resulted in Taxpayer's formation, Taxpayer states that it was a passive participant in the reorganization and Stock Transaction. Taxpayer further asserts that BBC USA is not unitary with Taxpayer's ice cream business in Tennessee.

*Id.*

In response to this contention, the court noted that when determining "whether two separate business entities form a unitary business, we must look beyond the superficial divisions between parent corporations and their subsidiaries to the 'underlying activity' generating the income." *Id.* (citing *see Mobil Oil Corp. v. Comm'r of Taxes*, 445 U.S. 425, 440–41, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980)). The *Blue Bell* court noted that "[t]o be an unrelated business activity, the separate business entity must constitute a 'discrete business enterprise'" from the taxpayer. *Id.* (citing *Exxon Corp.*, 447 U.S. at 223–24, 100 S.Ct. 2109).

In *Blue Bell*, it was undisputed that the business entities were separate entities. *Id.* It also was undisputed that the parent company conducted no business operations of its own, and that it "exist[ed] as a separate business entity to channel income from Taxpayer to BBC USA's stockholders without incurring a Texas franchise tax[.]" *Id.* In *Blue Bell*, the only business activity was the taxpayer's ice cream business. The court observed that the traditional tests constituting the "hallmarks of a unitary relationship" were "ill-suited" for assessing the relationship in *Blue Bell* "because all three tests require a comparison of the relationship of the separate business entities' business operations." *Id.* at 71-72. It was undisputed in *Blue Bell* that one of the relevant entities did not conduct business operations. *Id.* Thus, there were no business operations to compare. *Id.*

The relationship between Heinz LP and HJH One is analogous to the relationship between the relevant entities in *Blue Bell*. As noted above, the reorganization of the Heinz entities through which Heinz LP and HJH One were organized in their current form was undertaken to benefit the entire Heinz group in the United States. HJH One came into being as part of that reorganization. HJH One conducts no business, but owns stock in Heinz Co and pays the dividends received from that stock to Heinz LP in the form of partnership investment income. Like the circumstances present in *Blue Bell*, HJH One's ownership of stock and Heinz LP's investment in HJH One arose "solely as part of the reorganization of the entities profiting from the business." HJH One is not a "discrete business enterprise" under these facts and under the reasoning of the supreme court in *Blue Bell*. Additionally, although Heinz LP asserts that the disputed income arises from a "passive investment" in HJH One, HJH One does not conduct discrete business operations. Thus, the income flowing from HJH One to Heinz LP cannot be said to arise from the operation of a discrete business enterprise.

-12-

The taxpayer challenging a tax assessment has the burden to demonstrate that it is unconstitutional. *Blue Bell Creameries, L.P. v. Roberts,* 333 S.W.3d 59, 72 (Tenn. 2011) (citing *Butler Bros. v. McColgan*, 315 U.S. 501, 507(1942)). "Regardless of the analysis we use, it is [the] [t]axpayer's burden to identify clear and cogent evidence demonstrating that" the relevant entities are "discrete business enterprises." *Id.* (citing *Exxon Corp.*, 447 U.S. at 221, 100 S.Ct. 2109; *Mobil Oil Corp.*, 445 U.S. at 453–54, 100 S.Ct. 1223)). There is no evidence in the record that HJH One conducts operations that are discrete from those of Heinz LP. Accordingly, under *Blue Bell*, Heinz LP has not carried its burden to demonstrate that the Department's assessment was unconstitutional.

### *The Apportionment Formula*

It has long been held that "'the entire net income of a corporation, generated by interstate as well as intrastate activities, may be fairly apportioned among the States for tax purposes by formulas utilizing in-state aspects of interstate affairs.'" *Mobil Oil Corp. v. Comm'r of Taxes of Vermont*, 445 U.S. 425, 436 (1980)(quoting *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 460 (1959)). Not all dividend income received by a corporation is taxable in every state in which that corporation does business. *Id.* at 441. As discussed above, income is not apportionable in the absence of a unitary relationship. *Id*. at 442.

States have wide latitude to select and apply apportionment formulas. *Mobil Oil Corp*., 445 U.S. at 452. Acceptable formulas include those that "allocate income on the basis of the location of tangible assets . . . on the basis of gross sales . . . or-as is more typical today-by an averaging of three factors: payroll, sales and tangible properties." *Id*. at 452-453 (citations omitted). Regardless of which formula a state chooses, the formula must be fair. *Container Corp. of America v. Franchise Tax Bd*, 463 U.S. 159, 169 (1983). If a taxpayer can demonstrate by clear and cogent evidence that a state utilizes a formula that attributes income to the taxing state that is "out of all appropriate proportions to the business transacted in that [s]tate," or that the formula results in a "grossly distorted result," the formula will be struck down. *Id*. at 170 (citations omitted). A fair formula is one which, if it were to be applied by every state, "would result in no more than all of the unitary business's income being taxed." *Id.* at 169. Fairness additionally demands that the formula "actually reflect[s] a reasonable sense of how income is generated." *Id*.

Tennessee utilizes a formula based on an averaging of payroll, sales and tangible property. Tennessee Code Annotated § 67-4-2012. Heinz LP asserts that Tennessee's apportionment formula is unfair because it lacks "factor representation." It cites to the dissent in *Mobil Oil Corp. v. Commissioner of Taxes of Vermont*, 445 U.S. 425 (1980), for its assertion that the Department failed "to include the factors of the Foreign Affiliates that earned the income being taxed through the [a]ssessment at issue in this case[.]"

The dispute in *Mobil Oil* concerned amounts received by the taxpayer as dividends from the taxpayer's subsidiaries and affiliates that did business abroad. *Id*. at 430. The Court in *Mobil Oil* emphasized that the "foreign source" dividend income in that case was of two types. The first type consisted of dividends from domestic corporations that were organized in the United States in states

other than the taxing state, Vermont, and which conducted all their operations and earned all their income outside of the United States. The second consisted of dividends from corporations that were organized outside of the United States and operated abroad. *Id*. at 435. The Supreme Court held that a unitary relationship existed such that Vermont could tax "its proportionate share." *Id*. at 449. The majority confined its inquiry to the character of the income that Mobil Oil earned from its investments in subsidiaries and affiliates that operated abroad. *Id*. at 435. It declined to address the question of elements that would constitute a fair apportionment formula because it did not consider the issue to have been presented. *Id*. at 449.

The dissent in *Mobil Oil*, however, disagreed with the Court's conclusion that a unitary business existed, and disagreed with the majority that the issue of Vermont's apportionment formula had not been raised. *Id*. at 451 (Stevens, J., dissenting). The dissent stated that Vermont's application of its apportionment formula had been arbitrary and unconstitutional. *Id*. at 451 (Stevens, J., dissenting). It opined that Vermont had not evaluated the "entire enterprise in a consistent manner." *Id*. at 461. The dissent stated that if Mobil Oil's "worldwide 'petroleum enterprise' . . . is all part of one unitary business, . . . Vermont must evaluate the entire enterprise in a consistent manner." *Id*. The dissent concluded that a fair apportionment formula in that case would require including the "sales, payroll, and property values connected with the production of income by the payor corporations" in the formula. *Id*.

We are not insensitive to the logic of Justice Steven's dissent in *Mobil Oil*. However, the nature of the income addressed in *Mobil Oil* is distinguishable from the disputed income in this case. The income in Mobil Oil arose from dividends received by Mobil Oil from its subsidiaries and affiliates operating over-seas. The income in the case before us is partnership investment income arising from Heinz LP's investment in HJH One. HJH One receives the income as dividends from its stock in Heinz Co, a corporation organized and doing business in the United States. Although the profitability of Heinz Co may result, in part, from the success of its affiliates and subsidiaries, the income in this case is twice removed from the dividends Heinz Co receives from its foreign affiliates, and HJH One does not own 100 percent of Heinz Co stock. The Department has not sought to tax Heinz Co's dividends from its foreign affiliates, but Heinz LP's investment income from HJH One. Heinz LP has not demonstrated by clear and cogent evidence that the Department's apportionment is grossly distorted or unfair in this case.

### *Holding*

In light of the foregoing, the judgment of the trial court awarding summary judgment to the Department is affirmed. Costs of this appeal are taxed to the Appellant, H.J. Heinz Company, L.P., and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

-14-